We have come to the very last case of the day. Oh, my. And that case is 21-18-24, and Mr. Imani, okay. Daniel Hillis May it please the court, Mr. Imani. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Mr. Prado. The issue on appeal is whether the district court erred in applying two enhancements. It implied both the two-level stolen weapon enhancement and a four-level enhancement for an obliterated serial number. Since the text of Section 2k 2.1b4b says that one or the other enhancement applies, the district court erred by giving Mr. Prado both enhancements. The unambiguous guidelines plain language is dispositive. It uses the disjunctive or, not the conjunctive and, and so numerous cases instruct that the plain language controls and the court should give the plain language its ordinary meaning. And Kanaguchi is a case that we cite from the Supreme Court, but their cases are legion. Here, the district court simply failed to apply the plain meaning of the disjunctive term or, and as a consequence, my client's guideline range became too high. The district court's supposed to begin with the correct calculation of the guideline range per gall and other cases. And here, by correctly, or by incorrectly calculating the guideline range to include both enhancements, we had the problem of the guideline being anchored into the too high guideline range, but then affected the ultimate imposition sentence here. So we gave an example in our brief, and I think that it is persuasive about how it is that even we have related concerns about the type of harm that's posed by an obliterated and a stolen weapon, but nevertheless, the guidelines, we have instances where the guideline commission is elsewhere explicit that if you discharge, otherwise use, or brandish a firearm, you don't get separate enhancements for each one of those things. You get the most severe of them. And by analogy, in this case, the most significant, the most serious enhancement would be the four-level enhancement. You take the higher, not the cumulative, and you would get to four additional points, levels rather, not six. And so that is a problem here in our view, and it can't be harmless here. The government didn't meet its burden here and can't because the district court didn't say that it would otherwise impose the same sentence that sentence isn't affected by this. And so far as the government cited cases to the district court, those cases are not persuasive, and they're certainly not controlling. And so the Salinas case... Forgive me, but... Okay. So application no date to section 2K1.2, that's entitled application of subsection B4, provides that if the offense of conviction is itself one involving a stolen firearm, then the end has been under B4A would not apply because the base offense level already takes into account that the firearm was stolen. But the increase based on the alteration of the serial number would still apply. So doesn't that recognize an intent that a sentence separately take into account both that the firearm was stolen and that the serial number was altered? In an instance where there was proof that it was a firearm and the conviction was for that, the explicit guideline application note that you cite, Judge, would say that that would be the proper course here. But that's not what we have in this instance. And that's, of course, a burden problem for the government insofar that it says it could have, as a factual matter, established the necessities to impose enhancements for one firearm and then for another. But in our view, it would run into a unit of prosecution problem because here it is a single firearm. And of course, the proof doesn't allow the government to make a factual basis to support both enhancements. But I think that would be a problem here in this instance, Judge. It's not that there aren't occasions where multiple guidelines couldn't apply, but rather the particulars of this case show that the two enhancements couldn't apply. And this was evident from the text, and it could have been easily solved if there was any doubt just by calling up the Guideline Commission. Off the record, I did that to make sure that I wasn't getting this wrong. And this was a phone call away to get an easy answer on this. So in our view... I don't think, Mr. Ellis, excuse me, but any thoughts on the change in the drafting between the proposed guideline amendment and the final amendment where the phrase, apply the greater, was lost? No, because I think that we look to the explicit language that's in the guideline before we look to legislative history. As a matter of statutory interpretation, we don't need to get into legislative history and to try to look at the tea leaves and what was what, Judge, because the considerations are innumerable, as Judge Mannion may recall from his time in the legislature in the Indiana State Court, for why things get discarded and ultimately on the cutting room floor. Here, the plain language, the text is what controls. We don't need to look to legislative history. If it was fair for the district court to be concerned about that and wanted to, as a 3553A matter, discuss in its discretion the matter of sentencing philosophy, why it would be that a certain harm wasn't accounted for here, it could have done so, but that's not what happened. We have an instance where the guidelines were incorrectly calculated. And because, Judge should apply. With that, I don't have anything further. I reserve the balance of my time unless the court has questions. Thanks so much, Mr. Imani. May it please the court. My name is Niranjani Imani. I'm here today on behalf of the United States. Your honors, the district court promptly applied both the enhancement for possessing a stolen firearm and the enhancement for possessing a firearm with an obliterated serial number pursuant to guideline 2K2.1B4. Consistent with this court's case law, the plain text of the guidelines allows the court to apply both enhancements. The provision must be read in conjunction with the guidelines as a whole, taking into account the provision's context and purpose. Here, unlike the myriad guideline provisions that direct a court to choose between enhancements by applying the greatest or greater the text of 2K2.1B4 contains no such limitation. By its plain text, you can apply the enhancement for an obliterated serial number, or you can apply an enhancement for a stolen firearm, or you can apply both. I'm not sure I see that in the plain text, Mr. Imani. That's the or. Yes, your honor. In the court, what the government is asking is that the court not read the or in isolation, but give it its credence where it states in the rest of the provision. Notably, your honor, if the commission had intended an either or construct, it could have explicitly said so. But in this case, the commission considered a version of B4 that used the either or formulation for the two enhancements, but rejected it. The proposed amendment to the guideline divided the enhancements into two subparagraphs, subparagraph A and subparagraph B, and inserted the language, apply the greater of, in a preparatory clause. When the commission amended the guideline, however, it declined to include that preparatory language. And it makes sense. I mean, there's no explanation of that in the final issuance of the amended regulation, amended guidelines, is there? That's correct, your honor. But it makes sense because what the commission was seeking to do was punish independent and distinct harms associated with unlawful gun possession. An obliterated serial number obviously makes it harder to trace. By contrast, stolen firearms pose a different but related harm. Stolen firearms as it uses a way to circumvent state and federal regulations on gun purchases. Notably, the enhancement in this that defendant points to. Specifically, defendant points to guideline 282.B2, which he just described, which punishes defendants who use a gun during an aggravated assault. Excuse me. In that guideline, a defendant who discharges a firearm gets a higher enhancement than an individual who simply possesses a gun. But the defendant wouldn't get both enhancements. And that makes logical sense, your honors, because in that instance, the more serious conduct incorporates the less serious conduct. Someone who discharges a firearm must necessarily possess it. But that's not the case we have here. An individual who possesses a firearm with an obliterated serial number doesn't necessarily also possess a firearm that's been stolen. Again, these represent distinct and separate harms, but the commission was trying to punish because, again, they're each a separate aggravating circumstance. Now, there are a host of reasons why a defendant may try to obliterate a firearm. As defendant notes in his brief, it's possible that the firearm was obliterated, the serial number, excuse me, was obliterated to conceal the fact that the firearm was stolen. But there are other reasons as well. Firearm serial number may be obliterated, so it's more difficult for law enforcement to discover whether that firearm had been used in a different crime or connect the defendant to other criminal conduct or other criminals for that matter. Or perhaps the defendant would like to obscure or conceal the fact where a gun was lawfully purchased. This is especially true in a straw man purchase case where an individual can lawfully purchase a gun, obscure the serial number, and then either sell or provide it to another individual, then you sit in the commission of a crime. Defendant essentially advocates for a position that would run contrary, excuse me, to the prior decisions of this court. In United States v. Salinas, the court considered in Anders' brief on behalf of a defendant who had possessed a single weapon that was both stolen and had an altered serial number. Was that a precedential decision? No, your honor, it's not precedential. Why are you citing it? I'm sorry, your honor. Why are you citing it? Your honor, I'm citing it because it at least gives some insight to the direction of court. Just because it's not precedential doesn't mean it can be... Sounds like you're citing it as precedent. No, your honor, I'm not citing it as precedent. I'm citing it merely to acknowledge that this court has seen both enhancements apply in previous cases and has assumed that both could apply. Is that the argument having been raised? Yes, your honor. In Anders' brief, that specific argument had been raised, but the court specifically acknowledged that both guidelines had been applied and assumed that both could be applied. Why should we give that any weight at all? Your honor, the reason to give it weight is because at least it shows or at least gives some indication as to that these are distinct aspects. There is a reason we have the rule on not citing precedential opinions or non-precedential orders. I know that this court does not always honor its own rule in that respect, but there's a reason for that. Yes, your honor. What's your next point? Your honor, the defendant argued that both enhancements would be piling on, but that's not necessarily the case. Again, there's no language in limiting the application of both enhancements. And moreover, one of the aims of the guidelines is to hold defendants accountable for all their criminal conduct, not just some of it. So as in this case, where an individual possesses multiple firearms, some that are stolen, one that's obliterated, the application of just one but not both enhancements would understate the seriousness of the conduct. And as Judge Roedner noted in requesting to counsel, application 8A is particularly telling in this regard. Again, that application clarifies that if a defendant is charged under statute that criminalizes possession of a stolen weapon and the base level is charged under subsection 8-7, the court should apply the four-level enhancement if the gun also has an obliterated number, serial number. And that's in recognition, again, that these are distinct and separate aspects that a defendant should be held accountable for. It sounds like a pretty good argument that you might make to the Sentencing Commission if it ever gets a quorum that you could propose an amendment to clarify here. Yes, your honor, but it's also still within the bounds of this court that both enhancements still would apply. Again, the government isn't asking for this court to rewrite this guideline. It's simply asking the court to recognize that both enhancements relate to separate and distinct forms of conduct, both of which could apply simultaneously in the same case. And again, your honor, if the commission had intended for either or to apply, it could easily said so as it done throughout the guidelines. But in this case, as I noted previously, the amendment to B-4 that was ultimately adopted specifically rejected that formulation. Have any other circuits addressed the issue raised here? No, your honor, to my knowledge, and based on the government's review, no other circuit has addressed this issue square on. Yeah. Your honor, even if this court were to find that the district court incorrectly assessed the two-level enhancement for a stolen firearm, remand is unnecessary because the error was harmless. The guidelines would have been 120 months, the statutory maximum, regardless of the second enhancement applied. Now, Mr. Hill has argued that there's an anchoring effect that would work to reduce the ultimate sentence the defendant received. However, an anchoring effect would only apply when a district court incorrectly calculated the guideline range or if they calculated it too high. As just mentioned, the guideline range would have been 120 months, regardless of the inclusion of the enhancement for a stolen firearm. Therefore, there's no basis to this case. Well, let me interrupt just a minute because unlike my colleagues, I never sentenced anybody. They spent a good bit of time in district courts where they sentenced a lot of people. And it looks to me like, yeah, the guidelines were high, but the judge sentenced Prado to 108 months, which is below the guidelines. It isn't as low as he wants it now, but nevertheless, it was in spite of the guidelines, he sentenced to 108 months. Now, is there something wrong with that? No, your honor. The district court applied the appropriate 3553A factors in assessing a below-guideline sentence. Your honor, I see that my time has expired. If you allow me to just fully respond to your question. Yeah, I'm just looking at a practical point of view here, which may not be the right way to look at it. Yes, your honor. The court is looking at 108 months, which is below the guidelines. Correct, your honor. It is below the guideline range here, which was 120 months, which would have been calculated regardless of the inclusion of the 2-level enhancement. And that was based on a discussion of the relevant 3553A factors in this case. And you're saying the range wouldn't change? Correct, your honor. The range wouldn't change because regardless of the guideline, no matter what is calculated at the offense level was, both guidelines cancellation still remained above the statutory maximum in this case. Again, the statutory maximum, and therefore the guideline range would have been 120 months, either way you looked at it. Unless the court has any additional questions, the government respectfully requests that this court uphold the district court sentence in this case. Thank you, your honors. Your honor. It's certainly true that the guidelines would be capped by the statutory maximum. The problem is though, when the guidelines are calculated to suggest a sentence would be higher as a result of the application of a particular enhancement, the judge is now trying to measure the appropriate variance and is doing so from a perspective that the guidelines would have been much higher than they should have been here, but for the inclusion of the enhancement. So it does skew the ultimate result. And that can't be accounted for even with what the government just explained, capping of the guidelines as done by the statutory maximum. The government says that no other circuit to address this. And they're quite right. And that is because this is very apparent from the plain text of the guideline. Probation office in this case said, don't do this. And the judge did it. And it was contrary, of course, to what the text is. And that is another problem here. Of course, the government says it's not asking that the guideline be rewritten. It is because if the guideline says, or the government's constructing it to say, and, then that is essentially rewriting what the commission has included here. And the lack of a quorum, I don't think is going to move the needle on this, because ultimately, this is a matter that the commission was aware of and chose to use the language of for as opposed to and. It knows the difference between a conjunctive and a disjunctive. And when it gets a quorum is anybody's guess. But the text is what is controlling here in this particular case. The government's arguments are ultimately reduced to policy. And may have good policy reasons for making the arguments that it does. But those have to be advanced in the right context. And the guidelines aren't like 3553 a is the appropriate mechanism for the government to advance the claim that does. And it didn't. And that's not what the government, excuse me, what the district court relied on to impose sentence. It was apparently persuaded by Salinas and by the Perez case, but as Judge Hamilton said, those cases weren't precedential. The issue was perhaps missed by the acceptance of the Anders brief in Salinas. But that doesn't mean that it was correctly decided or that it was actually decided. It wasn't. It was non-precedential. And furthermore, issues that aren't litigated are never given controlling effect, even if the court does, like in Perez, include it in a factual recitation in the opinion. It doesn't mean that the court ultimately reached a legal conclusion on the issue that wasn't litigated. And such is the case in Perez. So we would rely again on the text. We would ask the court not to get into policy arguments because they are applicable when the guideline is plain and unambiguous as it is here. We don't need to read guideline tea leaves or figure out why somebody may have been persuaded to do something behind the scenes. Ultimately, it's the text that's adopted that controls the language. It is unambiguous. I think it's plain, Judge. It is unambiguous. Much as I'd like to come up and argue that the policy reasons or the ability to construe one word to mean something else should result in a different outcome for my clients in different cases. And, you know, I'm apt to make an aggressive argument here and there or go out on a limb, but I don't see how to get around the plain text in this case. And so we'd ask the court to vacate. All right. Well, thank you very much for the lively argument. And as always, and just take care of yourselves. Stay well. Take care of yourselves, your families. We're going to take the case under advisement and go off into the night.